NO. 22-10361

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Otis Crandel, as dependent administrator of, and on behalf of, Billy
Wayne Worl, Jr., Emily Garcia, James Matthew Garcia, and Jared
Andrew Garcia, Individually, the Estate of Brenda Kaye Worl, and
Brenda Kaye Worl's Heirs-at-Law, Billy Wayne Worl, Jr. Individually,

Plaintiffs – Appellants

v.

Vegas Hastings; Daniel Piper,

Defendants – Appellees

On Appeal from
United States District Court for the Northern District of Texas,
1:21-CV-00075

APPELLEES' BRIEF

Jon Mark Hogg
JACKSON WALKER L.L.P.
135 W. Twohig Ave., Suite C
San Angelo, Texas 76903
[Tel.] (325) 481-2560
[Fax] (325) 481-2585
*jmhogg@jw.com*

COUNSEL FOR APPELLEES

No. 22-10361

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

Otis Crandel, as dependent administrator of, and on behalf of, Billy
Wayne Worl, Jr., Emily Garcia, James Matthew Garcia, and Jared
Andrew Garcia, Individually, the Estate of Brenda Kaye Worl, and
Brenda Kaye Worl's Heirs-at-Law, Billy Wayne Worl, Jr. Individually,

Plaintiffs – Appellants

v.

Vegas Hastings; Daniel Piper,

Defendants – Appellees

———————————————

On Appeal from
United States District Court for the Northern District of Texas,
1:21-CV-00075

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following

listed persons and entities, as described in the fourth sentence of Fifth

Circuit Rule 28.2.1, have an interest in the outcome of this case.  These

representations are made in order that the judges of this Court may

evaluate possible disqualification or recusal.

i

## Plaintiffs-Appellants

Otis Crandel, as dependent administrator of, and on behalf of, Billy Wayne Worl, Jr., Emily Garcia, James Matthew Garcia, and Jared Andrew Garcia, individually, the Estate of Brenda Kaye Worl's heirs-at-law; Billy Wayne Worl, Jr.

## Counsel for Plaintiffs-Appellants

Bruce K. Thomas
LAW OFFICES OF BRUCE K. THOMAS
12900 Preston Road, Suite 590
Dallas, Texas  75230
[Tel.] (214) 296-9650
[Fax] (214) 296-9650
*bthomas@bthomaslaw.com*

T. Dean Malone
LAW OFFICES OF DEAN MALONE, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
[Tel.] (214) 670-9989
[Fax] (214) 670-9904
*dean@deanmalone.com*

## Defendants-Appellees
Vegas Hastings and Daniel Piper

## Defendants-Appellees Risk Pool Coverage

Texas Municipal League-Intergovernmental Risk Pool

## Counsel for Defendants-Appellees

Jon Mark Hogg
JACKSON WALKER L.L.P.
136 W. Twohig Ave., Suite B
San Angelo, Texas  76903
[Tel.] (325) 481-2560

[Fax] (325) 481-2585
*jmhogg@jw.com*

s/ Jon Mark Hogg
Jon Mark Hogg
Counsel of Record for Defendants-
Appellees

## STATEMENT REGARDING ORAL ARGUMENT

Officers request oral argument only in the event it is granted to Crandel.[1]  The legal issues raised in Crandel's Brief are neither new nor novel.  The facts themselves are not complex and are not in legitimate dispute.  Therefore, Officers believe that oral argument would not add anything new other than rehashing what is contained in the briefs.

---

[1] To make the parties referred to in this brief clear, all Appellants (Plaintiffs below) shall be referred to collectively as *CRANDEL*.  Appellee's (Defendants below), Vegas Hastings and Daniel Piper shall be collectively referred to as *OFFICERS*.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................... I

STATEMENT REGARDING ORAL ARGUMENT ................................ IV

TABLE OF CONTENTS ..................................................................... V

TABLE OF AUTHORITIES ............................................................ VII

APPELLEES' BRIEF ......................................................................... 1

RESPONSE TO STATEMENT OF THE ISSUES .................................. 1

RESPONSE TO ISSUE 1: ................................................................. 1

RESPONSE TO ISSUE 2: ................................................................. 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF THE ARGUMENT ....................................................... 5

ARGUMENT .................................................................................... 6

STANDARD OF REVIEW ................................................................. 6

ORDER OF ARGUMENT .................................................................. 6

NO ABUSE OF DISCRETION IN SUSTAINING OBJECTIONS ........................ 7

OBJECTIONS WERE SUFFICIENT ..................................................... 9

EVIDENCE IS NOT ADMISSIBLE ..................................................... 10

APPELLANTS ARE ENTITLED TO QUALIFIED IMMUNITY ........................ 16

OFFICERS DID NOT KNOW OF A SUBSTANTIAL RISK OF HARM ................ 21

UNANSWERED SCREENING FORM WAS NOT KNOWLEDGE ....................... 23

KNOWLEDGE OF THE RISK OF PHONE CORDS .................................... 23

OFFICERS' CONDUCT WAS OBJECTIVELY REASONABLE ......................... 26

LACK OF EMERGENCY DETENTION ≠ DELIBERATE INDIFFERENCE ........... 28

NO BYSTANDER LIABILITY ........................................................... 29

PRAYER ....................................................................................... 30

CERTIFICATE OF SERVICE ............................................................. 31

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE
STYLE REQUIREMENTS ....................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Estate of Allison v. Wansley,*
   524 Fed. Appx. 963 (5th Cir. 2013) .................................................... 17

*Estate of Bonilla v. Orange County,*
   982 F.3d 298 (5th Cir. 2020)....................................................... 17, 19

*Brady v. Ford Bend Cty.,*
   58 F.3d 173 (5th Cir. 1995).................................................................. 16

*Brown v. Callahan,*
   623 F.3d 249 (5th Cir. 2010)............................................................... 15

*Collier v. Montgomery,*
   569 F.3d 214 (5th Cir. 2009)............................................................... 15

*Cope v. Cogdill,*
   3 F.4th 198 (5th Cir. 2021), *cert. denied,* 142 S.Ct. 2573
   (2022) ..................................................................................................... 23

*Cope v. Cogdill, No. 19-10798,*
   *2021 U.S. App.LEXIS 19884 (5th Cir. July 2, 2021)*.................... 19, 24

*Cozzo v. Tangipahoa Parish Council-President Gov't,*
   279 F.3d 273 (5th Cir. 2002)............................................................... 18

*Domino v. Texas Dep't Criminal Justice,*
   239 F.3d 752 (5th Cir. 2001)............................................................... 20

*Fraternal Order of Police, Lodge 1 v. City of Camden,*
   842 F.3d 231 (3rd Cir. 2016)............................................................. 8, 9

*Hare v. City of Corinth,*
   135 F.3d 320 (5th Cir. 1998)............................................................... 17

*Hyatt v. Thomas,*
   843 F.3d 172 (5th Cir. 2016) ................................................................ 15

*Keller v. Coastal Bend Coll.,*
   629 Fed. App'x 596 (5th Circ. 2015) ...................................................... 4

*King v. Handorf,*
   821 F.3d 650 (5th Cir. 2016) ................................................................ 15

*Kingsley v. Hendrickson,*
   576 U.S. 389 (2015) ...................................................................... 19, 21

*Lee v. Offshore Logistical and Transport LLC,*
   859 F.3d 353 (5th Cir. 2017) .............................................................. 8, 9

*Little v. Liquid Air Corp.,*
   37 F.3d 1069 (5th Cir. 1994) (en banc) ................................................ 14

*Nunez v. Deviney,*
   2007 U.S. Dist. LEXIS 51683 (N.D. Tex. July 17, 2007) ...................... 20

*Smith v. Palafox,*
   728 Fed. App'x 270 (5th Cir. 2018) ........................................................ 9

*United States v. Waldrip,*
   981 F.2d 799 (5th Circ. 1993) ................................................................ 6

*Whitley v. Hanna,*
   726 F.3d 631 (5th Cir. 2013), cert denied, 572 U.S. 1087
   (2014) ................................................................................................ 29

## Statutes

Jones Act ................................................................................................ 8

TEX. HEALTH & SAFETY CODE § 573.001(a) (Vernon's 2022) ................... 28

## Other Authorities

FED. R. APP. P. 32(a)(5) ........................................................................ 32

viii

FED. R. APP. P. 32(a)(6) ..................................................... 32

FED. R. APP. P. 32(a)(7)(B) .............................................. 32

FED. R. APP. P. 32(a)(7)(B)(iii) ....................................... 32

Fed. R. Evid. 103(a)(1) .................................................. 5, 6

Fed. R. Evid. 103(b) .......................................................... 6

Fed. R. Evid. 802............................................................... 4

Fed. R. Evid. 803(18) ...................................................... 12

Fed. R. Evid. 901............................................................... 5

Fed. R. Evid. 902(6) ........................................................ 13

FRE 103(a) ......................................................................... 6

Rule 56(c)(2) ............................................................... 8, 11

Fifth Circuit Rule 25.2.1 ............................................... 31

Fifth Circuit Rule 25.2.13 ............................................. 31

Fifth Circuit Rule 28.2.1 ........................................ *passim*

U.S. Constitution Fourteenth Amendment ............................ 17

United States Constitution ............................................. 18

## APPELLEES' BRIEF

**TO THE HONORABLE U.S. COURT OF APPEALS FOR THE FIFTH CIRCUIT:**

Officers ask the Court to affirm the decision of the Trial Court granting summary judgment in their favor based on qualified immunity.

## RESPONSE TO STATEMENT OF THE ISSUES

**Response to Issue 1:**

There was no error in granting summary judgment for Officers because Crandel failed to raise a legitimate issue of material fact and Officers were entitled to qualified immunity as a matter of law.

**Response to Issue 2:**

There was no error in sustaining the objections to Crandel's summary judgment evidence, and any error there may have been was harmless error.

## STATEMENT OF THE CASE

Officers Vegas Hastings and Daniel Piper of the City of Clyde Police Department were dispatched to a call of a domestic disturbance at the home of Billy and Brenda Worl on April 2, 2019. (ROA 469). When he arrived, Hastings observed a woman standing outside who

was later identified as Brenda Worl. (Id.). Hastings went to speak with Mr. Worl and Piper continued interviewing Brenda Worl. (Id.). Piper observed that Brenda Worl appeared to be under the influence of an alcoholic beverage, and she stated to him, "I can't leave I've been drinking." (ROA 473). Worl stated that she had drunk two boxes of wine. (ROA 446 p.44 L. 24). She appeared to be frustrated but not belligerent. (Id., 447 p.47 l. 10). She reported that she had been thrown from one end of the trailer to the other. (ROA 473.). Brenda Worl told Piper she had accidentally burned her hand while looking for a can opener. (Id.). Piper saw no signs of injury on her. (Id.) Her husband, Billy Worl, reported to the officers that he had pushed Brenda away, off his banjo to prevent her from breaking it. (Id.). Brenda then slapped him in the face and he slapped her back on her face. (Id.). Then Brenda tried kicking him in "the nuts" but he was able to block the kick. (Id.). Billy Worl said that was when Brenda called the police. (Id.). Piper asked Billy Worl if Brenda had ever had any mental illness during the four years they had been together. (ROA 484 Appx. Tab 2 Video at 4: 50). He answered no. (Id. at 4:57). Piper then asked if Mrs. Worl ever had any mental disability, and Billy answered, "in the past." (Id. at

2

4:58 – 5:03).  After further investigation and interviews, the Officers

decided to arrest Brenda Worl for Class C assault and take her to the

Callahan County Jail.  (ROA 473).

When they arrived at the jail Brenda Worl told Hastings, "I am

happy to be here."  (ROA 484 Tab 11 video at 8:48 – 8:50).  She also told

Hastings "thank you" at the jail, and "you got me out of a sit[ua]tion."

(Id. at 9:05 – 9:11).  Hastings testified that during the arrest Worl was

up and down at times but could not say that she was upset the whole

time.  (ROA 461 p.104 l.15-18).

At the county jail, Brenda Worl began arguing with the jailers

during the booking process.  (ROA 474).  She became frustrated during

the booking process and was irritated when jail staff started asking her

questions.  (ROA 452 p.66 l.3-15). Apparently she wanted the jailers or

the Officers to read her Miranda rights.  (Id., p.67 l.24).  Officers

Hastings and Piper observed that Brenda Worl was not complying and

answering the booking questions.  (ROA 474).  Hastings and Piper tried

to inform Worl that if she didn't answer the questions she would have to

remain in the jail longer so staff could complete the booking process.

(Id.).  Worl continued to argue that the jail did not need her information

and she was not going to comply.  (Id.).  Jail staff informed Worl that if

she did not comply with the medical questions she would be placed in a

holding cell.  (Id.).  Worl replied that she would not comply.  (Id.).

Jailer McGowen escorted Worl to a holding cell, which was the jail

visitation room, and placed her inside.  (Id.).  Before placing Worl in the

visitation room, Jailer McGowen asked Mrs. Worl if she had ever

attempted suicide.  (ROA 469-470).  Worl presented her arms to Jailer

McGowen but said nothing.  (Id.).  Hastings was present and did not see

any scars or other indications of injury on Worl's arms.  (Id.).  Hastings

had never seen the visitation room before this incident. (ROA 454 p.75

l.16-22).  Hastings did not look into the room when Worl was placed in

there and he was not aware there were phones in the room.  (ROA 457

p.89 l.18-23).  He had never seen any arrested subject be placed in the

visitation room before. (ROA 461 p. 105 l.9-12).

A short time after Worl was placed in the visitation room, Jailer

Hall went to check on Worl and she appeared fine. (ROA 397 p.59 l.19 –

p.62 l.16; ROA 427 p.80 l.24-25).  Jailer McGowen went to check on

Worl a few minutes later but Worl was sitting down and McGowen

could not see what she was doing.  (ROA 469-470).  She came back and

reported that and Hastings returned to the visitation room with

McGowen. (Id.). When McGowen opened the door they discovered Worl

sitting on the ground with the phone cord from one of the visitation

phones wrapped around her neck. (Id.). McGowen instructed Hastings

to contact EMS and he went back to the dispatch office and informed

Officer Piper and Jailer Hall to contact EMS. (Id.). Hastings then ran

back and started CPR. (Id.). Hastings and Piper continued to perform

CPR on Worl until EMS arrived and took over. (Id.). Worl was taken to

the hospital but ultimately died.

## SUMMARY OF THE ARGUMENT

The Trial Court did not abuse its discretion in sustaining Officers'

objections to some of Crandel's summary judgment evidence. The

evidence objected to constitutes hearsay, is not authenticated, and

cannot be placed in admissible form. Even if there was an abuse of

discretion, such error was harmless and would not have affected the

outcome of the case.

The Trial Court properly granted summary judgment for Officers

because there was no evidence, beyond speculation, to raise a genuine

issue of material fact as to whether Officers appreciated that Worl was

a suicide risk or that the phone cord would likely be an instrument of suicide by Worl.

## ARGUMENT

### Standard of Review

The standard of review on a grant of summary judgment is de novo. *Keller v. Coastal Bend Coll.*, 629 Fed. App'x 596, 598 (5th Circ. 2015). But when the trial court's evidentiary rulings are also at issue, the appellate court reviews those rulings for abuse of discretion. *Id.* First the appellate court reviews the evidentiary rulings which define the summary judgment record, giving those rulings due deference. *Id.* Then with the record defined the court reviews the trial court's summary judgment decision de novo. *Id.*

### Order of Argument

Because the standard of review instructs us to consider the evidentiary rulings under an abuse of discretion standard, Officers will address the evidentiary rulings first (Issue 2). Then we will address the de novo review of the summary judgment (Issue 1).

## No Abuse of Discretion In Sustaining Objections

Crandel presented the attached list of summary judgment evidence (ROA 1437).

**PLAINTIFFS' APPENDIX**

Exhibit A                  Collected Research on Pervasive Use of Phone Cord as Ligatures . . . . . . 1

   Exhibit A1              Expert Tim Gravette's Report on Phone Cords in Jails . . . . . . . . . 1

   Exhibit A2              TCJS Advisory Memo Regarding Phone Cords in Jails . . . . . . . . 11

   Exhibit A3-A18          Reports of Custodial Suicides by Cord Ligatures . . . . . . . . . . . . . 14

   Exhibit A19-A28         Scholarly Articles on Use of Cords as Ligatures . . . . . . . . . . . . . .125

   Exhibit A29-A66         News Articles on Cord Suicides and Strangulations . . . . . . . . . . 211

   Exhibit A67-A75         Websites Marketing "Anti-Suicide" Phones . . . . . . . . . . . . . . . . 313

   Exhibit A76-A80         Online Advisories Warning of Cord Strangulation Risks . . . . . . 327

   Exhibit A81-A93         Media Depictions of Phone Cord Strangulation . . . . . . . . . . . . . 348

Exhibit B                  Uncompleted Suicide Screening Form . . . . . . . . . . . . . . . . . . . . . . . . . 373

Exhibit C                  Custodial Death Report Regarding Brenda Worl . . . . . . . . . . . . . . . . . . 375

Exhibit D                  Dalena Hall Deposition Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . 382

Exhibit E                  Cari Renea McGowen Deposition Transcript . . . . . . . . . . . . . . . . . . . . 407

Exhibit F                  Vegas Hastings Deposition Transcript . . . . . . . . . . . . . . . . . . . . . . . . . 435

Exhibit G                  Daniel Piper Deposition Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . . 467

Exhibit H                  Callahan County Deposition Transcript . . . . . . . . . . . . . . . . . . . . . . . . 495

Exhibit I                  City of Clyde Deposition Transcript . . . . . . . . . . . . . . . . . . . . . . . . . . . 512

Exhibit J                  Photos of Visitation Room . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 526

Exhibit K                  Julie Lemon Statement Reporting Incident to TCJS . . . . . . . . . . . . . . . 535

Exhibit L                  Citizens EMS Medical Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 537

Exhibit M                  Daniel Piper Incident Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 545

Exhibit N                  Vegas Hastings Incident Report . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 549

Exhibit O                  Relevant Callahan County Written Policies and Notices . . . . . . . . . . . . 553

Exhibit P                  Expert Arthur Joyce's Report on Suicide Risk Factors . . . . . . . . . . . . . 557

Officers objected only to Exhibits A-1, A-3 – A 93 and Exhibit P "because they contained evidence in a form that would not be admissible at trial as they constituted hearsay under Fed. R. Evid. 802 and because they are not properly authenticated under Fed. R. Evid. 901." (ROA 3279). Crandel filed a Sur-Reply responding to these objections. (ROA 3335). At the end of its decision, the Trial Court sustained the objections in a footnote, but also found that "even if considered, said Exhibits do not raise a genuine issue of material fact as to deliberate indifference by Hall or McGowen."[2] (ROA 3365).

In his brief, Crandel asserted three main arguments as to why the Trial Court abused its discretion: (1) Defendants' objections were insufficient, not specific enough and did not preserve any error for appeal; (2) summary judgment evidence does not have to be in admissible form; and (3) the hearsay and authenticity objections lack merit. There was no error, and Crandel's arguments should be rejected.

---

[2] It is unclear if the Trial Court meant Hastings and Piper rather than Hall or McGowen. The same footnote ruling was made in a separate order granting summary judgment for Hall and McGowen. (ROA 3356). For purposes of this brief we will presume that this was an error and that the Court meant to say Hastings and Piper in the footnote at (ROA 3365).

## Objections Were Sufficient

Crandel seems to have his standards on preservation of error backwards. Federal Rule of Evidence 103(a)(1) governs rulings on evidence and how to preserve a claim of error. It provides that error is preserved in a ruling to admit evidence if a party timely objects on the record or makes a motion to strike, and states the specific ground, unless it was apparent from the context. Fed. R. Evid. 103(a)(1); see *United States v. Waldrip*, 981 F.2d 799, 804 (5th Circ. 1993). If the ruling is one excluding evidence, error is preserved if the party offering the excluded evidence informs the court of the substance of the offer, unless the substance was apparent from the context. Fed. R. Evid. 103(b).

In this case, Crandel is objecting to the exclusion of evidence under FRE 103(b). It is not Officers who are objecting to the admission of evidence. Crandel preserved that error by having submitted the evidence to the Trial Court in his Appendix. There is no issue of Officers waiving their objection because it was not timely and specific under FRE 103(a). The only question then is whether the trial court abused its discretion in sustaining the objections.

## Evidence Is Not Admissible

Crandel argues that the evidence does not have to be in admissible form at the summary judgment stage so long as it is anticipated that it can be put into an admissible form later. In support they cite *Lee v. Offshore Logistical and Transport LLC*, 859 F.3d 353 (5th Cir. 2017).

*Lee* was a Jones Act injury case in which the trial court granted summary judgment for the Defendant. *Id.*, at 354. One of the pieces of evidence the trial court discounted was the unsworn witness statement of Captain Jamison. *Id.* In reversing summary judgment for failure to consider this piece of evidence, this Court provided clarification to the 2010 amendment to Rule 56(c)(2). *Id.* Under the now amended rule, the Court explained, the substance or content of the evidence submitted to support or dispute a fact must be admissible, the form in which it is presented does not have to be admissible at the summary judgment stage. *Id.*, at 355 (citing 11 Moore's Federal Practice – Civil ¶ 56.91 (2017) and *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3rd Cir. 2016) [holding that a proponent need only explain the admissible form that is anticipated].

In other words, "…the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id.* The Court of Appeals reversed and remanded for consideration of whether the particular material objected to can or cannot be presented in a form that would be admissible. *Id.*, at 355-356.

In his sur-reply, Crandel made his case as to what the admissible form of this evidence would be at trial. (ROA 3335). He argued that Tim Gravette and Dr. Arthur Joyce PhD's reports are admissible because they are expert witnesses that Crandel anticipates calling at trial. Yet Crandel never designated either of these persons as expert witnesses and did not provide any reports prior to their inclusion of these unsworn documents in the response to Officers' Motion for Summary Judgment. These documents are just general papers discussing general topics related to jail suicides. They do not address the facts, evidence or testimony of this particular case, nor do they offer any opinions about this case. In essence they are articles written by these individuals, nothing more. As this Court has recognized, unsworn expert reports are not competent summary judgment evidence. *Smith*

*v. Palafox,* 728 Fed. App'x 270, 275-6 (5th Cir. 2018) [District Court did not abuse its discretion in excluding unsworn expert reports.]

Even if these were properly designated experts, and unsworn expert reports were admissible, in their sur-reply Crandel provided no explanation as to how these reports could be reduced to admissible evidence. Simply asserting that they are or will be experts and they will ultimately testify at trial is not enough when the documents in question are just general documents and do not address the facts of this case, or how their opinions relate to those facts. The Court did not abuse its discretion in sustaining the objections to Exhibits A1 and P of Crandel's summary judgment evidence.

While it is true that official government records, like the custodial death reports, can be admissible at trial when properly authenticated, Plaintiff did not purport to provide any authentication for these printouts at all. These are not documents under seal and there is no certificate accompanying them. They are printouts with no testimony or affidavits from anyone establishing that these are in fact records kept by the Texas Attorney General's office or actual printouts from the Attorney General's website.

The rather liberal standard of Rule 56(c)(2) does not mean that the rules of evidence no longer apply to the summary judgment context. There still must be some basic showing to establish the reliability and trustworthiness of the evidence. Specifically, to fit into the public records exception to the hearsay rule the record must set out the office's activities, a matter observed while under a legal duty to report or factual findings from a legally authorized investigation. Here none of this information was provided and nothing was offered but purported printouts of a website. As submitted, there is no way to verify or confirm that these website pages actually can be introduced as copies of official government records on file with the Attorney General's Office.

The scholarly and news articles are so obviously hearsay statements that Crandel instead argues that they are not being offered for the truth of the matter asserted but to show that the danger of phone cords used as ligatures is "so common that the danger is obvious to members of the ready public." (App'ts Brief 63). This is an interesting argument since Crandel also argues in the same brief that the danger of cords is so obvious the Court should hold these Defendants liable for not protecting her from being put in a room that

had a phone in it. (See, id., at 36, 37, 38, 42, 43, 44, 45, 46, 48, 50, 51, 54, 55, 56, 57).

In his Brief, Crandel even states that "the use of phone cords as ligatures is so pervasive in the corrections community that the dangers were obvious to all Defendants" and "The included scholarly and news articles similarly show that phone cords are an obvious risk to suicidal individuals." (Id., at 49,50). This evidence was offered to prove the truth of the matter asserted and is obviously hearsay.

Crandel also argues that they can introduce such hearsay evidence through the hearsay objection for learned treatises, periodicals or pamphlets. Fed. R. Evid. 803(18). This exception of course does not apply to news articles, so in essence this is a concession that the news articles are in fact inadmissible hearsay.

As to the documents Crandel refers to as scholarly articles, Crandel still failed to establish how they anticipate such evidence being reduced to admissible form at trial. Specifically, they did not identify how or through what expert witness they plan to establish the articles are reliable authority nor what portions of the articles would be read into evidence at trial.

14

Crandel also argues that the printouts of websites marketing anti-suicide phones, online advisories warning of cord strangulation risks, and media depictions of phone cord strangulation are not being offered for the truth of the matter asserted but merely to prove that there are such phones marketed to the corrections industry and that everyone knows people can commit suicide with a phone cord.

This combines the same defective arguments regarding the scholarly articles and the custodial death report printouts. The fact that Crandel is trying to prove is everyone knows phone cords can be used as ligatures so they are an obvious danger. The conclusion he wants the Court to infer is therefore Officers must have known of the danger in this situation. That products are sold to address this danger goes directly to an attempt to prove that the danger was obvious. They are offered to prove the truth of the matter asserted, and no hearsay exception applies. Therefore, they are inadmissible. They also are simply pages printed off a website with no way to confirm their source or accuracy of the information and do not fit the self-authentication rule of Fed. R. Evid. 902(6).

The Trial Court did not abuse its discretion in sustaining Officers'
objections, especially since none of the evidence related to the sole issue
which the Trial Court had to decide—whether Hastings and Piper are
entitled to qualified immunity because they had no knowledge that
Worl was a substantial suicide risk. Even if there was an abuse of
discretion, such error was harmless as none of the evidence related to
the Officers actions, whether their conduct violated clearly established
law, or that no reasonable officer would have acted any different in
their circumstances.

Crandel's first issue should be overruled.

## Appellants Are Entitled to Qualified Immunity

With the record clear, we can now move on to the real issue in this
case—whether Officers appreciated that Worl was a suicide risk or that
the phone cord would likely be an instrument of suicide by Worl.

Typically, the party moving for summary judgment must
demonstrate the absence of a genuine dispute of material fact. *Little v.
Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).
However, a qualified immunity defense alters the usual summary
judgment burden of proof; for once an official pleads the defense of

qualified immunity in a § 1983 action, the burden then shifts to the plaintiff to prove the defense does not apply in this case. See, *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); see also *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) ("Although nominally an affirmative defense, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised."). Thus, Defendants' assertion of qualified immunity shifts the burden to Plaintiffs to negate the availability of the defense. *See King v. Handorf*, 821 F.3d 650 (5th Cir. 2016); *see also Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

The well-established qualified immunity standard provides a two part test: (1) the plaintiff must allege a violation of a clearly established constitutional right; and (2) if a violation is established, the plaintiff must prove the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. See*, Hare v. City of Corinth*, 135 F.3d 320, 324 (5th Cir. 1998) (citing *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997)).

Clearly established means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Allison v. Wansley*, 524 Fed.

17

Appx. 963, 969 (5th Cir. 2013). An officer's acts are considered to be
objectively reasonable unless *all* reasonable officials in the defendants'
circumstances would have known that the defendants' conduct violated
the United States Constitution. *See id.* (emphasis in original). Because
qualified immunity turns only upon the *objective* reasonableness of the
defendants' acts, a particular defendant's subjective state of mind has
no bearing on whether that defendant is entitled to qualified immunity.
*See id.*

The doctrine of qualified immunity protects "all but the plainly
incompetent or those who knowingly violate the law." *Cozzo v.
Tangipahoa Parish Council-President Gov't,* 279 F.3d 273, 284 (5th Cir.
2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Whether an
official's conduct was objectively reasonable is a question of law. See *id.*
(citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). Qualified
immunity represents the norm and should be denied only in rare
circumstances. *Brady v. Ford Bend Cty.*, 58 F.3d 173 (5th Cir. 1995).

Crandel sued Officers for violating Brenda Worl's right to
reasonable medical/mental health care, to be protected and not to be
punished as a pre-trial detainee under the Fourteenth Amendment to

the U.S. Constitution. (ROA 91). They also alleged a bystander liability claim. (ROA 92).

As a pre-trial detainee, Worl had a constitutional right to medical care and to protection from suicidal tendencies under the Fourteenth Amendment. *Estate of Bonilla v. Orange County*, 982 F.3d 298, 304 (5th Cir. 2020). In an episodic act case, such as this one, Defendants could only violate Worl's constitutional rights under the Fourteenth Amendment if they acted with deliberate indifference to her serious medical need. *Id.*[3]

To establish Defendants were deliberately indifferent, Plaintiffs must prove: (1) Defendants had subjective knowledge of a substantial and serious risk that Worl might commit suicide; and (2) Defendants nevertheless disregarded the risk of suicide by responding to it with deliberate indifference. *Id.,* at 305. Plaintiffs' evidence must prove that Defendants were aware of facts that a substantial risk of serious harm existed, and yet disregarded that risk by failing to take reasonable measures to abate it. *Id.* Deliberate indifference is an extremely high

---

[3] While Crandel argues that the Court should apply an objective reasonableness standard as articulated in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Fifth Circuit has rejected this argument. *See, Cope v. Cogdill, No. 19-10798, 2021 U.S. App.LEXIS 19884, *11 n.7 (5th Cir. July 2, 2021).* Therefore, deliberate indifference is the proper standard.

standard to meet. *Domino v. Texas Dep't Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Because suicide is difficult to predict, an official's failure to alleviate a significant risk that he should have perceived but did not does not rise to the level of deliberate indifference. *Nunez v. Deviney*, 2007 U.S. Dist. LEXIS 51683, at *3 (N.D. Tex. July 17, 2007); see also *Domino*, 239 F.3d at 756.

To establish that a constitutional violation occurred, Crandel must show that Hastings or Piper had individual subjective knowledge that Worl would be likely to attempt suicide, and failed to take reasonable measures to abate that risk.

Crandel presents several arguments as to why there is a legitimate fact issue on one of these elements. First, they argue that Officers knew Worl was a substantial risk for serious self-harm including suicide. Second, the Officers knew the importance of the jail screening forms. Third, that Officers knew the risk posed by phone cords. Fourth, that Officers were deliberately indifferent to Worl's risk of self-harm. Fifth, the Officers should have transported Worl to a proper medical/mental health care facility. And, sixth, Officers were

deliberately indifferent in leaving Worl alone in a locked room with an obvious ligature. We will address these in order.[4]

## Officers Did Not Know of a Substantial Risk of Harm

There is no evidence that Officers had any subjective knowledge that there was a substantial risk Worl was likely to harm herself or commit suicide. There were no indications or signs that Worl had attempted to commit suicide before, no reports were made by either her husband or Worl herself that she was going to commit suicide or that she had any self-inflicted injuries that night. She was intoxicated and upset because of a domestic disturbance with her husband, nothing more. The Officers inquired as to whether Worl had any mental illness in the last four years and were told no. When asked if she had ever had a mental disability (as opposed to a mental illness) they were told "in the past".

Officers were never provided any information at the scene or during transport of Worl to the jail that would lead a reasonable officer

---

[4] Crandel also argues, for preservation of error purposes, that this Court should adopt the objective reasonableness standard in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), and that the doctrine of qualified immunity should be abolished or modified. These arguments were not raised in Crandel's response to Officers' Motion for Summary Judgment. These arguments have been waived.

to believe Worl was a suicide risk.  In fact, when they arrived Worl expressed gratitude to the Officers for getting her out of a bad situation. On the video as she is taken into the jail she appears somewhat intoxicated but otherwise normal.

Crandel's argument is essentially that it is reasonable to infer that the Officers knew Worl was a suicide risk because she had been drinking, and because she refused to cooperate during the booking process.  This is no evidence.

He also argues that it is reasonable to infer the Officers knew there was a phone in the room in which Worl was placed and that they knew it could be used as a ligature.  This is not evidence.  It is nothing more than speculation.

Regardless, the relevant issue in this case is not whether the Officers knew or did not know or remember if there was a phone in the room Worl was placed in by the jailer.  The issue in this case is whether they knew of a substantial risk that Worl was likely to commit suicide. There is no evidence to support such a finding and summary judgment was proper.

## Unanswered Screening Form Was Not Knowledge

After Worl arrived at the jail, and Officers handed her over to jail staff, she refused to cooperate in answering any questions required to book her into the jail.  These included the required Screening Form for Suicide and Medical/Mental/Developmental Impairments.   Crandel faults the Officers for intervening and assisting jail staff in trying to get Worl to cooperate and in telling her that her stay in jail would last longer if she did not cooperate in answering the questions.[5]  Jail staff then made the decision to place her in the visitation room until she was willing to cooperate in answering the questions.  Before placing Worl there, Jailer McGowen directly asked Worl if she had attempted suicide before and her answer was not non-committal.  It was a sarcastic, "I don't know? Have I?"  Worl then showed her arms to McGowen and Hastings and they showed no sign of self-injury.

## Knowledge of The Risk of Phone Cords

Crandel argues that *Cope v. Cogdill*, 3 F.4th 198 (5th Cir. 2021), *cert. denied*, 142 S.Ct. 2573 (2022) recognized that phone cords are an

---

[5] This was a true statement since Worl could not be released on bond without first having been booked into the jail. (ROA 483 p.62 l.6-19).

obvious ligature and that knowledge on the part of the Officers that phone cords are a potential ligature is sufficient to establish deliberate indifference in this situation.  This is a misreading of the majority's opinion in *Cope* and a misstatement of the Officers' deposition testimony. Yet, the key difference is that in *Cope*, the defendants knew and admitted the deceased was a suicide risk.  The question there was whether the jailers knew the phone cord in the jail cell could be used as a ligature.  There was not any non-speculative evidence that they did. Here the case is flipped.  We are concerned primarily with whether Officers knew Worl was at risk for suicide.

While the Officers testified that they knew about the danger of ligatures for suicidal inmates in general, they did not testify they knew the phone cords in the visitation cell could be used that way.  Even if we assume the Officers had some general awareness that a phone cord could be used as a ligature, what they did not have was any knowledge that Worl was a suicide risk or that there was a phone cord of sufficient length in the room in which she was placed that could be used as a ligature.

Crandel's voluminous summary judgment evidence about the obviousness of phone cords being used as ligatures in jail suicides does not change the fact that the Officers did not know Worl was a suicide risk or that they knew a phone with a long enough cord was in the visitation room. Without this subjective knowledge, Officers are entitled to qualified immunity.

Knowledge that Worl did not answer the questions on the screening form does not translate to knowledge that she was in fact a suicide risk. While it may or may not have required jail staff to take different steps in dealing with Worl, that was not within the control of Officers. There is no clearly established law that arresting officers from another local government entity have the authority or responsibility to determine how an arrestee is dealt with or where she is placed in the county jail. The Texas Commission on Jail Standards memo by itself does not show that the Officers had ever seen it or were aware of it, or that they would have recognized that it applied to them since they were the arresting officers, not county jailers.

## Officers' Conduct Was Objectively Reasonable

In his Brief, Crandel goes on to make a conclusory argument that the Officers were deliberately indifferent to Worl's risk of suicide by letting the jailers place Worl in the visitation room.  Since this is a qualified immunity case, presumably what they are trying to argue in this point of their brief is that Officers' conduct was objectively unreasonable in responding to a known risk of suicide.

We  have to assume a whole lot to even get to this point of the analysis.  We have to assume both Hastings and Piper had actual knowledge of the risk of suicide, which we have seen they did not.  Then we have to assume that the Officers knew phone cords were potential ligatures and that a phone with a long enough cord to strangle herself was in the room where Worl was placed.  There is no evidence to establish this either.

Unfortunately for Crandel, even if we assume all of those things, there is no legitimate dispute that looking at this case from the perspective of the Officers at the time, and without the benefit of 20/20 hindsight, the Officers acted as objectively reasonable officers.  Crandel's first factual argument on this point is that Officers knew the

jailers had not instituted a suicide watch for Worl.  While there was testimony from the jailers that Worl had not been placed on a suicide watch, there is no evidence that Officers were aware of that, or that they were aware that they were required to provide constant monitoring under these facts.  Crandel tries to make much out of the Callahan County Policy that stated arresting officers must stay with inmates throughout the booking process until inmate is placed in their cell.  But they ignore the fact that the Officers had not left, and Hastings stayed with Worl until she was placed in a holding cell by the jailers.  There was no instruction or request from jail staff that Hastings remain and continuously monitor Worl in that holding cell/visitation room.

What we are talking about here is something that took place in a matter of ten minutes or so.  There is no clearly established law that arresting officers have a constitutional obligation to continuously monitor an arrestee in a holding cell in a county jail simply because they have not cooperated in booking. Nor is there any clearly established law that requires an arresting officer to overrule a decision made by county jail staff about the handling and placement of an arrestee during or after the booking process.

## Lack of Emergency Detention ≠ Deliberate Indifference

As conceded by Crandel, a violation of a state law does not necessarily mean there was a constitutional violation. This is even more true when there was no violation of state law. The emergency detention statute cited by Crandel is not a mandate for law enforcement, but a tool available to law enforcement. This is a statute that an officer may use to arrest an individual if the officer believes the person is suffering from a mental illness and there is a substantial risk of serious harm to the person or others unless they are immediately restrained. TEX. HEALTH & SAFETY CODE § 573.001(a) (Vernon's 2022).

The decision whether to arrest a person under this statute, just like the decision of whether to arrest a suspect for a crime, falls within the discretion of the arresting officer. There was no indication that arrest under this statute was appropriate, or that probable cause even existed for the Officers to have taken this extraordinary action. Worl exhibited no signs of mental illness and her husband denied any history of mental illness. Failing to arrest her under the mental illness emergency detention statute does not constitute deliberate indifference and there is no clearly established law to the contrary.

## No Bystander Liability

To survive summary judgment on their bystander liability claim, Crandel must show a legitimate factual dispute that Officers Hastings and Piper knew a fellow officer was violating Worl's constitutional right, had a reasonable opportunity to intervene, yet chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 647 n. 13 (5th Cir. 2013), cert denied, 572 U.S. 1087 (2014). Crandel's arguments on this are nothing more than a rehash of his previous arguments. As set out above, there is no evidence that either Hastings or Piper knew or witnessed any other officer or jailer violating Worl's rights.

What the evidence does reveal is that despite not being employees or jailers of Callahan County, Officers immediately intervened and began CPR in a valiant attempt to save Worl's life. There was no violation of a constitutional right Officers knew about or witnessed, and they acted objectively, reasonably and in accordance with clearly established law. They are entitled to the protection of qualified immunity. Crandel's first issue should be overruled and the decision of the Trial Court granting summary judgment should be affirmed.

## PRAYER

WHEREFORE, Officers pray that the Trial Court's order be affirmed, that Appellants take nothing against the Officers, for their costs and for such other relief to which they may be justly entitled.

Respectfully submitted,

JACKSON WALKER L.L.P.
136 W. Twohig Ave., Suite B
San Angelo, Texas  76903
(325) 481-2560
(325) 481-2585 - Facsimile

By:   s/ Jon Mark Hogg
        Jon Mark Hogg
        jmhogg@jw.com
        State Bar No. 00784286

ATTORNEYS FOR APPELLEES

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 19, 2022, the foregoing document was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon the following registered CM/ECF users:

Bruce K. Thomas
LAW OFFICE OF BRUCE K. THOMAS
12900 Preston Road, Suite 590
Dallas, Texas 75230
[Tel.] (214) 296-9650
[Fax] (214) 296-9650
bthomas@bthomaslw.com

T. Dean Malone
LAW OFFICES OF DEAN MALONE, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
[Tel.] (214) 670-9989
[Fax] (214) 670-9904
*dean@deanmalone.com*

Counsel also certifies that on September 19, 2022, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/.

Counsel further certifies that 1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; 2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and 3) the document has been scanned with Trend Micro OfficeScan Client version 10.6 and is free of viruses.

s/ Jon Mark Hogg
Jon Mark Hogg

## Certificate of Compliance
## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

[ X ] this brief contains 5,556 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), or

[   ]   this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows, version 10 in Century Schoolbook Font 14-point type face, or

[   ]   this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

s/ Jon Mark Hogg
Jon Mark Hogg

COUNSEL FOR DEFENDANTS-APPELLEES

Dated:  September 19, 2022